## ALPENA CITY WATER CO. *v.* CITY OF ALPENA.

1. ERROR—QUESTIONS NOT RAISED ON TRIAL.

   Questions not raised on the trial will not be considered on writ of error.

2. MUNICIPAL CONTRACTS—CHARTER PROVISIONS—GENERAL STATUTE.

   A city may make a valid contract with a waterworks company under 3 Comp. Laws, § 8511, notwithstanding such contract violates a charter provision restricting the annual tax levy to a certain per cent. of the assessed valuation.

3. SAME—EXEMPTION FROM TAXATION.

   A contract providing that a waterworks company shall furnish water free of charge for public purposes, in consideration that the city will "save and keep harmless the waterworks from any city or school tax," is not invalid as an exemption of property from taxation.

4. SAME—AFTER-ACQUIRED PROPERTY.

   Such provision applies to all the waterworks which it is necessary to erect in the proper conduct of the business, though acquired after the execution of the contract.

5. SAME—CONSTRUCTION—HIGHWAY TAX.

   A highway tax levied by authority of the city for highways under its control is a city tax, within the meaning of such contract.

6. SAME—EVIDENCE.

   Where, for 20 years, a city has received and paid quarterly for all the water it contracted for, evidence that the company failed to furnish the best quality of water, and that it allowed mains in the streets to be frozen up and the hydrants to become out of repair, is inadmissible in an action by the company to recover taxes it was compelled to pay, and from which the city agreed to save it harmless.

Error to Alpena; Emerick, J. Submitted October 8, 1901. (Docket No. 2.) Decided May 19, 1902.

*Assumpsit* by the Alpena City Water Company against the city of Alpena to recover money paid for taxes. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*I. S. Canfield,* for appellant.

*Joseph H. Cobb,* for appellee.

MONTGOMERY, J.   In 1878 the common council of the defendant city adopted a resolution declaring it to be expedient to have constructed in the city waterworks, for the purpose of supplying the city and the inhabitants thereof with water, and that it was inexpedient for the city itself to build such works.   Following upon this, and on the 14th of October, 1878, a contract was entered into with the plaintiff, by the terms of which the plaintiff undertook to construct and maintain a system of waterworks in the city, and to furnish water to the city at certain stated prices; and section 9 of the contract is, in part, as follows:

"Said second party further agrees to furnish, free of charge, during all the term aforesaid, water to and for the use of all public buildings owned, used, or occupied by said city, all public school buildings and yards, all city offices, parks, for as many public fountains and watering troughs as the common council of said city may require, and for city jail.   In consideration, however, said first party shall save and keep harmless the waterworks aforesaid from any city or school tax during said period."

The evidence shows that, for all the period since these waterworks were put in, the water for which charge was made was accepted by the city, and the bills for such water were paid as rendered by the water company.   This action is brought to recover city, highway, and school taxes paid for the years 1886 to 1899, inclusive.

When the plant was erected, and for several years thereafter, the same was located upon leased ground.   In 1888 or 1889 what is known in the record as the "Shore Property" was acquired by the plaintiff, and a steam plant erected, on the shore of Thunder Bay; and the Morse dam, so called, was purchased by the plaintiff at or about the same time.   Although the water company owned this dam, only a portion of the power was used for its purposes.   The remainder, with nearly all the surround-

ing land, was leased to and occupied by persons who used the same for other purposes.

The circuit judge held that the plaintiff was entitled to recover the taxes which it had been required to pay upon its waterworks. He held that the term "waterworks aforesaid" should be held to include the shore property, so called, which it became necessary to employ in the business, and upon which a house, to inclose its machinery and to maintain a pumping station, had been erected. But as to the Morse property, so called, he held that it was impossible to divide and apportion the tax which should be recovered by the plaintiff, and refused to allow any recovery for the same. The defendant alone brings error.

The questions presented are: *First*, the validity of the contract; *second*, whether the city had power to exempt the plaintiff from taxes; *third*, does section 9, above referred to, exempt after-acquired property? *fourth*, does the term "city or school" include highway taxes? and, *fifth*, whether defendant was not entitled to have the question of plaintiff's nonperformance of the contract submitted to the jury.

The question is presented whether the mayor and recorder could bind the city, without the council first authorizing them to execute the contract. We do not discover that this question was raised on the trial, and we shall not discuss it.

The principal contention seems to be that the contract was in excess of the authority of the city. We think that the question of authority is settled by the case of *Menominee Water Co.* v. *City of Menominee*, 124 Mich. 386 (83 N. W. 127), and that a discussion of the question here involved would be only a repetition of what is there decided.

It is contended that it was not within the power of the city to exempt the company from taxation. We think that is not the question here involved. It is a question of whether the city, in consideration of the furnishing for

its use of certain water by the plaintiff, could stipulate to itself pay the taxes which should be assessed for certain purposes. The stipulation is not a stipulation to exempt from taxation, but to save the plaintiff harmless from taxes, which could only be done by payment being made by the city. The case, upon this question, is controlled by *Ludington Water-Supply Co.* v. *City of Ludington*, 119 Mich. 480 (78 N. W. 558).

We think it is also clear that the undertaking applied to all the waterworks which it was necessary for the plaintiff to erect in the proper conduct of its business.

It is contended that the "city tax," as used in this contract, does not include the highway tax. The language of the contract is "any city or school tax." The highway tax is levied by the authority of the city, and the highways are under its control; and we think it cannot be said that the highway tax is not a city tax, within the meaning of this language.

It is further contended that the court was in error in refusing to admit testimony showing a nonperformance of the contract by the plaintiff. The undisputed testimony shows that the city received and paid for all the water which was stipulated to be furnished. What the defendant offered to show was that the plaintiff had not furnished as good water as Thunder Bay provides; that it had allowed mains in the streets to be frozen up in the winter time, the hydrants to become out of order, so that they could not be used in case of a fire, and other things of that nature. The circuit judge was of the opinion, and stated, that the contract was entered into more than 20 years ago; that both parties had acted upon it,—the water company by furnishing some water and some service, for which the city had paid from quarter to quarter; that this state of facts had been made to appear by the evidence, and was not in dispute; and he held that in this action to recover, under section 9, for these taxes which plaintiff had been compelled to pay, it was not competent to litigate the entire subject of the administration of the contract. We

think there was no error in this ruling.˙ The alleged defaults of the plaintiff related to other portions of the contract. The compensation for the service provided for by the other portions of the contract had been paid by the city, and, if the city is ever to be concluded, it would seem that such an adjustment between the parties would be sufficient to conclude it.

We find no error in the record, and the judgment will be affirmed.

Hooker, C. J., and Moore, J., concurred. Long and Grant, JJ., did not sit.