THE PLUM TREES LIME COMPANY *vs.* SAMUEL KEELER.

Third Judicial District, Bridgeport, April Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

A motion to correct the finding under General Statutes, §§ 795, 796, should contain written exceptions to particular findings or to the refusal to find as requested. If made under § 797, it ought not to anticipate, but to follow within one week, the filing of the finding.

A title to property, or a lien upon or possession of it, is not essential to the existence of an insurable interest therein. It is sufficient to constitute such an interest, that one derives a benefit from the existence of the property or would suffer a loss by its destruction.

In the present case the plaintiff, who was a lessee of a lime kiln which was in a dilapidated condition, having constructed several new buildings upon the premises at a cost to it of about $2,500, and being bound by its lease to keep the buildings in good repair, insured for $1,200 those which it had built, but by a mistake, occasioned by the insurance company, the policy was taken out in the name of the defendant landowner, who received the insurance money after the buildings had been destroyed by fire, although he had refused, at the plaintiff's request, to take out any insurance upon his own buildings. *Held* that the plaintiff had an insurable interest in the property; and that the defendant was to be regarded as a mere custodian or trustee of the insurance moneys for the benefit of the plaintiff, who was equitably entitled to them.

(1)

A trust is implied when, as in this case, it is deducible from the transaction as a matter of intent.

The defendant claimed that he was entitled to a set off for the expenses incurred by him in a former suit in collecting the insurance moneys now in question. *Held* that this claim was not well founded, since the defendant could not properly have recovered attorney's fees in that suit.

Argued April 19th—decided July 6th, 1917.

ACTION to recover moneys paid by certain fire insurance companies to the defendant as a fire loss, to which the plaintiff claimed to be equitably entitled, brought to and tried by the Court of Common Pleas in Fairfield County, *Scott, J.;* facts found and judgment rendered for the plaintiff for $819, and appeal by the defendant. *No error.*

The plaintiff is a corporation organized under the statute laws of Connecticut. This action is brought by Wilbur F. Tomlinson, Charles Kerr and Alphaus A. Hathaway, its directors, acting as trustees for the purpose of closing up the business of the corporation pursuant to the provisions of §§ 29 and 30 of Chapter 194 of the Public Acts of 1903, regulating the voluntary dissolution of corporations.

In August, 1910, the defendant was the owner of the premises described in the plaintiff's complaint, as amended, upon which was a ledge or deposit of limestone, with lime kilns and lime shed. On August 4th, 1910, the defendant leased these premises to one Alfred P. Phillips, for a term of ten years from date, which premises, under a series of assignments of this lease, passed into the possession of the plaintiff on the 24th day of February, 1912. This lease provided that the lessee should keep the kilns, buildings, machinery and plant thereon, in good repair, and should deliver up the same at the expiration of its tenancy in as good condition as they were then in, ordinary wear, fire and

other unavoidable casualties excepted. Subsequent to the 24th day of February, 1912, and up to the 8th day of October, 1914, the plaintiff was engaged in mining or quarrying limestone on these premises, and the burning, manufacturing and preparing the same for market.

At the time of the execution of this lease, and for a number of years prior thereto, these premises had been unoccupied and unused, and the kilns and buildings had been grossly neglected. At the time these premises passed into the possession of the plaintiff, the plant thereon consisted of three lime kilns, constructed of non-combustible materials, to wit: exteriorly of brick, and lined internally with fire brick, and the structures connected with the kilns, built of wood, were decayed and unsafe and not practicable for the uses required of them, and a lime shed practically dismantled by the removal of everything that could be carried away; the plant being unfit, inadequate and insufficient for prosecuting the business of the plaintiff. The plaintiff, for the purpose of enabling it to carry on its business conveniently and efficiently, was compelled to erect and construct, and did erect and construct, various structures and appliances on the leased premises, at its own cost and expense, and for its own purpose and advantage. The structures erected by the plaintiff on these leased premises, consisted of a wooden tower on top of the kilns, with a hoisting apparatus thereon for the purpose of hoisting their raw limestone and fuel to the top of the kilns; a platform on top of the kilns with a bridge leading therefrom to the hillside adjoining the kilns for the purpose of affording access thereto with teams and materials; an engine-house and other structures and appliances adapted to the business of the plaintiff, costing in the aggregate about $2,500. The buildings, structures and appliances erected by the plaintiff on these premises were new, and did not re-

place other similar structures, but were radically different from those used by its predecessors in occupancy of the premises, and changed the method of handling the raw material and finished product in the plaintiff's business.

The plaintiff, desiring to protect its property on these premises, made application to the local agent of the Fidelity-Phoenix Fire Insurance Company of New York, and the Phoenix Fire Insurance Company of Hartford, Connecticut, for insurance thereon. At the time of making such application, the plaintiff, by its president and general manager, informed the agent of the condition of the property desired to be covered by the proposed insurance; that the structures to be insured were the property of the plaintiff, and were located on real estate occupied under a lease from the defendant, and that it desired to have the policies issued in the name of the plaintiff; but they were informed by this agent that the policies could not be issued in the name of the plaintiff, but must be issued in the name of the defendant as owner of the land upon which the structures were located. The plaintiff, relying upon the statement of the agent, caused the property of the plaintiff, located on these premises, to be insured for the sum of $600 under Policy No. 329, issued by the Fidelity-Phoenix Fire Insurance Company, and for the additional sum of $600 under Policy No. 2295, issued by the Phoenix Fire Insurance Company, in the name of the defendant as beneficiary. The plaintiff paid the premium on these policies, retained the same in its possession, and had no intention of insuring the property of the defendant, but intended to insure its own property located on the leased premises.

The defendant was ignorant that these policies, Nos. 329 and 2295, had been issued until after the property insured thereunder had been destroyed by fire, when ap-

plication was made to him by the plaintiff to execute a proof of loss as required by the insurance companies. The plaintiff, by its officers, requested the defendant to insure his buildings on these premises, but the defendant refused to do so. On October 8th, 1914, the buildings, structures and appliances on these premises belonging to the plaintiff and insured under the policies were destroyed by fire. At the time of the execution of the policies, and at the time of the loss occasioned by the fire, the plaintiff was the owner of the property insured under these policies. Upon proof of loss, the insurance companies adjusted the same and paid the sum of $1,200 to the defendant, and the defendant has retained the same.

On November 17th, 1914, the plaintiff initiated proceedings for the dissolution of its corporate existence, pursuant to the provisions of §§ 29 and 30 of Chapter 194 of the Public Acts of 1903, regulating the voluntary dissolution of corporations, and subsequent to that date the plaintiff ceased doing business as a going concern, and its directors have since then been acting as trustees in closing up the business of the corporation. All property belonging to the plaintiff is in the hands and under the control of its directors acting as trustees. The plaintiff, by its directors acting as trustees, made demand upon the defendant for the proceeds of the insurance policies, as a part of the assets of the company for the purpose of liquidating its indebtedness and closing up its business. Subsequent to the commencement of proceedings for winding up the corporate existence of the plaintiff, the defendant offered to expend the proceeds of the policies in restoring the defendant's own buildings on these premises which were not insured under the policies. The defendant refused to pay over the proceeds of the insurance to the plaintiff. The proceeds of the insurance policies in

the hands of the defendant are insufficient to restore the structures and appliances built by the plaintiff, to an efficient, workable condition. Immediately after proceedings were commenced to terminate the corporate existence of the plaintiff, its directors, acting as trustees, surrendered the possession of the leased premises to the defendant, and the defendant has since been in possession of the same.

*Leo Davis,* for the appellant (defendant).

*George Wakeman,* for the appellee (plaintiff).

RORABACK, J. The plaintiff seeks to recover from the defendant the proceeds of two insurance policies described in the complaint, and judgment was rendered for it to recover $819.27.

Several reasons of appeal are based upon alleged errors of the trial court in denying certain paragraphs of the defendant's motion to correct the finding. This motion to correct is informal. If we consider it as brought under §§ 795 and 796 of the General Statutes, we do not find, as we should, any written exceptions to any finding of facts or to a refusal to find facts as requested. Practice Book (1908) p. 268. The reasons of appeal, if considered as made under the provisions of § 797 of the General Statutes, are irregular. This section provides, in substance, that in lieu of the motion to correct, under §§ 794, 795 and 796 of the General Statutes, either party may, within one week after he shall have received notice of the filing of such finding, file with the clerk of the court a copy of the evidence and rulings, with a motion that such evidence be made a part of the record on appeal, and that the claims of the appellant for such correction may be presented in the assignments of error in the same way that questions

of law are now raised. The record discloses that this motion, to make the evidence and rulings part of the record, came too early in the defendant's attempt to take his appeal. It should have been made within one week after he received notice of the filing of the finding. It appears, however, that this motion was in fact made about four months before the finding of the trial court was filed with the clerk of the court. But it appears that the court below recognized the defendant's motion as made under the provisions of § 797, as it ordered a certificate of the evidence. The purpose of the defendant is clear, and we are not disposed, by a strict construction of § 797 of the General Statutes, to deprive him of a remedy which, if properly pursued, was his.

One of the requests to correct the finding was allowed by the trial court. Other assignments of error relate to facts of but little importance. The evidence as to the remainder of the facts referred to in the motion to correct, is either conflicting, or is of such a nature that we cannot say that the trial court erred in finding or refusing to find certain facts. Therefore the motion to correct the finding is overruled, and the claim for a correction is denied.

The first four reasons of appeal assign error in a general and indefinite manner. They may, however, be considered as suggesting the proposition that the court erred in holding that the Plum Trees Lime Company had an insurable interest in the property insured. It may be said generally that "by the law of insurance, any person has an insurable interest in property, by the existence of which he receives a benefit, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself." *Eastern R. Co.* v. *Relief Fire Ins. Co.*, 98 Mass. 420, 423.

In *Getchell* v. *Mercantile & Mfrs. Mut. Fire Ins. Co.*,

109 Me. 274, 277, 83 Atl. 801, 30 Ann. Cas. 739, the court say: "The crucial question therefore is, will the insured be directly and financially affected by the loss of the property insured. If so, he has such an interest as the law will recognize. The loss must not be indirect or sentimental, but direct and actual. It is not necessarily an interest in the property in the sense of title, but a concern in the preservation of the property and such a relation to or connection with it as will necessarily entail a pecuniary loss in case of its injury or destruction. This opens a wide field and the decisions take an extensive range with a growing tendency to expand rather than to contract the scope of the term. It has therefore been held that it is sufficient if the insured has any legal interest whatever as an owner in fee, a mortgagee, a tenant for life or a lessee." In *Fowle* v. *Springfield F. & M. Ins. Co.*, 122 Mass. 191, 194, the court said: "The plaintiffs had an insurable interest in this building. They had erected it at their own expense, and used and occupied it, in their business, as a carpet store. They might wish to rebuild it, or to indemnify themselves for their expenditures, in the event of its loss by fire. In either case, it was proper for them to procure insurance, and they might lawfully do so to the extent of the value of the building. It is clear that they would derive benefit from its continuing to exist, and would be injured by its destruction." The plaintiffs, in the case quoted, were sublessees of the land on which the building insured stood. See, also, cases cited in note, 30 Ann. Cas. 741, and 14 R. C. L. 915, § 91.

In the present case the plaintiff's lease required it to keep the kilns, buildings and machinery in good repair. It had expended about $2,500 in erecting buildings, structures and appliances upon the leased premises. These buildings were new and entirely different

from those used by its predecessors in occupancy. This lease it appears, under ordinary conditions, was not to expire until August, 1920. Under these circumstances the plaintiff had such an insurable interest in the property in question as permitted it to procure the insurance and to recover in case of loss.

The plaintiff's complaint alleges: "Said corporation, for its own benefit, protection and advantage, and at its own cost and expense, insured its property, so erected and constructed on the leased premises, . . . under policies which, through error, inadvertence and mistake, were issued by the Insurance Companies in the name of the defendant, Samuel Keeler, as beneficiary, instead of in the name of said Plum Trees Lime Company, although the defendant had no interest in these policies or the property insured thereby, other than a nominal one resulting from the error as aforesaid." These allegations were denied by the defendant in his answer. We learn from the judgment-file that the issues upon the questions thus presented were found in favor of the plaintiff. The finding of facts made by the trial court is entirely consistent with this adjudication. It also appears that the defendant, when requested to insure his buildings, refused so to do; and that the value of the plaintiff's buildings and structures standing upon the leased premises, when they were destroyed by fire, was much greater than the amount of insurance covered by the insurance policies then in force. Under these conditions it is now too late for the defendant to claim that the Plum Trees Lime Company had no legal or equitable right to recover this insurance money.

The defendant also claims that the trial court erred in reaching the conclusion that the defendant was holding this insurance money in trust for the plaintiff. It must be conceded that it appears from the face of the insurance policies that the apparent legal title to this

insurance and the money derived therefrom was in the defendant. But the court below has found as a fact that the intention of the Plum Trees Lime Company, the party procuring the insurance, was to protect its own property and not that of the defendant. It has also been found that through mistake and inadvertence the insurance policies were issued by the insurance companies in the name of the defendant, Keeler, as beneficiary, although he has no interest in the policies other than a nominal one. Mr. Justice Swayne, in *Seymour* v. *Freer*, 75 U. S. (8 Wall.) 202, 213, 19 L. Ed. 306, 310, defined a trust as follows: "A trust is where there are rights, titles, and interests in property distinct from the legal ownership. In such cases, the legal title, in the eye of the law, carries with it, to the holder, absolute dominion; but behind it lie beneficial rights and interests in the same property belonging to another. These rights, to the extent to which they exist, are a charge upon the property, and constitute an equity which a court of equity will protect and enforce whenever its aid for that purpose is properly invoked." It is also a familiar principle of law that a trust may be express or implied, and that it is implied when deducible from the transaction as a matter of intent. 8 Words & Phrases, p. 7121. It follows, therefore, that from the facts found the trial court properly held that the defendant might well be regarded as holding the proceeds of this insurance money in trust.

One reason of appeal is that the court erred in ruling and holding that the plaintiff was not bound, under its lease, to pay to the defendant rent for the term beginning March 1st, 1914, and ending March 1st, 1916. From the scant information which the record contains upon this branch of the case, we cannot find any error in the action of the trial court in that connection.

Upon the facts found there is no ground for the claim

now made, that the court erred in holding that the defendant was not entitled to a set-off for his expenses in a former suit in collecting the insurance money now in question. It appears that the only issue in that case was the right to the possession of the checks which were given by the insurance companies in their adjustment of the loss sustained by fire. These checks were made payable to the defendant, Keeler, and were in the possession of Tomlinson, the president of the Plum Trees Lime Company. This question was litigated between Keeler and Tomlinson; Keeler was successful in this litigation and Tomlinson paid the costs. It appears that this litigation was not against the corporation, but against an individual who happened to be president of the company. But a more complete and decisive objection to this claim is, that it is apparently based upon a demand for attorneys' fees in an action in which no such claim could have been properly allowed.

There is no error.

In this opinion the other judges concurred.