THE HARTFORD-CONNECTICUT TRUST COMPANY, ADMINISTRATOR, *vs.* LINDSAY B. CAMBELL ET AL.

First Judicial District, Hartford, January Term, 1922.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Of the two statutory methods available for the correction in this court of a finding of a trial court, an appellant desiring to pursue that given by §§ 5829, 5830 and 5831, must file, within the time fixed by statute, his motion to correct, and accompany it by his exceptions, with the evidence thereunder, to the finding or to the refusal of the court to correct, assigning as error in his assignment of errors the failure of the court to correct the finding in accordance with exceptions as named.

If, however, the appellant desires to pursue the method set forth in § 5832, he need not file a motion to correct,—though the most approved practice is to file such motion in order to apprise the trial court of the corrections desired; he need only file a transcript of the entire evidence, assigning, as errors, the corrections he desires to pursue.

These two methods cannot be pursued at the same time, and if the first method is begun and subsequently the second is pursued, the first will be deemed abandoned.

The first method should be used where the corrections desired do not

require the consideration of a large part of the evidence; the second method where they do.

Unless the corrections claimed are substantial and intended to be seriously pursued, they should not be pressed where they involve the printing of any substantial amount of the evidence.

In the absence of an assignment of error presenting the claim for a correction of the finding, the court will not consider the correction, even though the evidence has been filed as required under the second method.

It should be clearly recognized that the second method is extremely expensive for both the State and the client, and should not be used except in those cases where the whole or a substantial part of the evidence must be considered on the appeal.

Contracts entered into by an official of a trust company trustee, within the power of the trustee and within the authority of the official, but subject to the approval of the board of trustees of the company, will be deemed to be approved when such approval is expressly had or may be reasonably implied from the circumstances; and where no time is specified for the fulfilment of the contract it must be carried out within a reasonable time, a question which is primarily one of fact dependent upon the circumstances and evidence of the intention of the parties so far as that can be ascertained, but becomes a reviewable question of law where all the facts are present from which the conclusion of reasonable time has been drawn.

The evidence in the present case reviewed and *held* to sustain the conclusion of the trial court, that as matter of law the approval of the contract by the trustees of the plaintiff must be inferred from the acts and conduct of the plaintiff.

Argued January 3d—decided February 21st, 1922.

SUIT to quiet and settle the title to real estate, brought to the Superior Court in Hartford County and tried to the court, *Haines, J.;* facts found and judgment rendered for the defendant Cambell, from which the plaintiff and the defendant John Cope appealed. *No error.*

*Arthur Perkins*, for the appellants (plaintiff and defendant Cope).

*Josiah H. Peck*, with whom was *Thomas J. Conroy*, for the appellee (defendant Cambell).

WHEELER, C. J.   One of the errors assigned is the refusal of the court to correct paragraph twelve of the finding as requested.   The request was properly denied. In effect, the amendment requested appears in paragraph thirteen of the finding.   If it had not so appeared, we should have regarded it as too insignificant to furnish a basis for an assignment of error.   The printing of the evidence for such a purpose was wholly indefensible, and the trial court should have refused to certify the evidence.   If an appellant desires to correct a finding in a limited degree, the better practice requires him to pursue the method prescribed in §§ 5829, 5830 and 5831. If he desires to correct a finding in such way that it will be desirable to have before the court a large part of the evidence, he may pursue this method or that under § 5832.   The profession should recognize that the method provided by § 5832 is extremely expensive for both the State and the client, and should not use it except in those cases where the whole or a substantial part of the evidence must be considered on the appeal.

A lack of uniformity in pursuing the statutory methods for the correction of a finding, leads us to restate these remedies as interpreted by this court. The statutes provide two remedies for the correction of a finding: (a) that of §§ 5829, 5830 and 5831, and (b) that of § 5832.   An appellant desiring to pursue method (a) must file within the time fixed by statute, his motion to correct, and accompany it by his exceptions, with the evidence thereunder, to the finding or to refusal of the court to correct.   *Walsh* v. *Hayes,* 72 Conn. 397, 403, 44 Atl. 725; *Wales* v. *Graves,* 72 Conn. 355, 360, 44 Atl. 480; *Twining* v. *Goodwin,* 83 Conn. 500, 501, 77 Atl. 953.   In his assignment of errors he must assign, as error, the failure of the court to correct the finding in accordance with exceptions, as named.   Compliance with the form prescribed

in the Practice Book (1908) page 273, will satisfy our requirements. An appellant desiring to pursue method (b), is not required by the statute to file a motion to correct, but the most approved practice is to file such motion in order to apprise the trial court of the corrections desired; he is, however, required to file a transcript of the entire evidence, and thereafter, in his assignment of errors, he must assign as errors such corrections as he desires to pursue in substantially the following form: "The appellant further claims that the finding should be corrected (a) by striking out paragraphs 9, 12 and 13 of the finding; (b) by substituting in place of paragraph 5 of the finding paragraph 4 of the draft-finding; (c) by adding to the finding the following numbered paragraphs of the draft-finding." In the absence of an assignment of error presenting the claim for a correction of the finding, this court will not consider the correction of the finding even though the evidence be filed under § 5832. *Dennison* v. *Waterville Cutlery Co.,* 80 Conn. 596, 597, 69 Atl. 1022; *Churchill Grain & Seed Co.* v. *Newton,* 88 Conn. 130, 132, 89 Atl. 1121; *Eva* v. *Gough,* 93 Conn. 38, 42, 104 Atl. 238; *Boughton* v. *Boughton,* 77 Conn. 7, 9, 58 Atl. 226; *Durham* v. *Larom,* 95 Conn. 475, 477, 111 Atl. 832; *Plum Trees Lime Co.* v. *Keeler,* 92 Conn. 1, 6, 101 Atl. 509.

Methods (a) and (b) cannot be pursued at the same time. *Davidson* v. *Ripps Co.,* 85 Conn. 444, 446, 83 Atl. 532. If method (a) is begun and subsequently method (b) is pursued, this will be deemed to be an abandonment of method (a). Unless the corrections claimed are substantial and intended to be seriously pursued, they should not be pressed where they involve the printing of any substantial amount of evidence.

The agreement under which the defendant Cambell claimed the right to purchase the title to the real estate

in question, was construed in the former appeal, 95 Conn. 399, 111 Atl. 864, to require that the order of the Court of Probate and the approval of the trustees should be made as conditions precedent to the taking effect of the agreement. As no time was specified for the performance of these conditions, we held that the law would assume that the parties intended performance to be within a reasonable time, and approval need not be by formal vote of the trustees of plaintiff, but might be evidenced by the conduct and acts from which the law would infer an intent to approve.

Upon the facts as alleged in the answer, we held that the approval of the trustees must be inferred from their acts and conduct as therein set forth, and we said that we should be obliged to hold, as matter of law, that two months was a reasonable time for the trustees to approve or disapprove. One allegation upon which this conclusion was made to largely rest was, that "on November 1st, two months and more after the execution of the agreement, Cambell proposed to the plaintiff that the agreement be rescinded and the $100, paid on account of the purchase price at the execution of the agreement, be returned, but the plaintiff refused." Of this allegation we said: "The retention of this money under these circumstances and the refusal to rescind the agreement, would, unless there be other facts surrounding this transaction which changed its legal significance, constitute in law an approval of the agreement and make it incumbent upon the plaintiff to complete the sale according to the terms of the agreement."

Upon the present trial the court found these allegations, which constitute paragraph 6 of the amended answer, not proven. Therefore the facts from which the court held that, as matter of law, the approval of the trustees must be inferred are not before the court

in their then form in the present appeal.  We must thus examine the facts found by the trial court in order to determine whether they evidence in law an approval by the trustees within a reasonable time.

Mr. Fenn, an official of the plaintiff, had authority to sell the half interest of the plaintiff in these premises, subject to the approval of the trustees of the plaintiff. He had reported to the trust officer in charge of the administration of the Cope estate that a contract for the sale of this property had been made.  This contract had been made on August 25th, 1919, and Cambell paid the plaintiff on account of the purchase price $100.  Mr. Fenn arranged with Cambell to close this contract on August 29th, but failed to keep this appointment.  On September 2d, Fenn told Cambell that owing to a dispute between the widow of George Cope, beneficiary of plaintiff's half of this estate, and John Cope, owner of the other half, it would take a few days to straighten out the matter.  A few days thereafter, and frequently during September and October, Fenn told Cambell that the only reason the contract was not consummated was the opposition of the widow of George Cope.  Late in October, 1919, the attorney for the widow met Cambell at Fenn's office, and then suggested to Fenn that the plaintiff carry out the agreement as the plaintiff had the legal right to do.  Cambell then told Fenn he wanted the matter decided that day and Fenn understood that Cambell wanted to then get possession of the property, or to be released from the contract.  Down to the time of this action neither party to the agreement, except as herein stated, proposed or offered to rescind the agreement, and the attorney for the widow, Fenn, and Cambell, continued to have interviews concerning this matter, but no definite conclusion was reached.

On January 19th Cambell caused the contract to be

recorded, and immediately thereafter the plaintiff notified him that the contract was void owing to the lack of ratification by the trustees, and tendered him the $100 and demanded a release of his interest in the premises, but Cambell declined to receive the money or to release his interest.

It was entirely competent for the plaintiff to condition Fenn's authority to make sales upon the approval of its board of trustees, and proper for the board to condition its approval upon the acquiescence of the beneficiaries of the trust. The indications upon this record are that this approval followed, as a rule, the contracts of Fenn when approved by the trust officer of the plaintiff. But whether this is so or not, it is clear that the trust officer, as well as Fenn, approved of this contract, and that the only reason it was not consummated was the difference between the widow of George Cope, the beneficiary of plaintiff's interest, and John Cope. And when late in October, 1919, the attorney for the widow advised Fenn to have the plaintiff carry out the contract, this was a withdrawal at this time of the opposition of the widow, and there was then no reason why the plaintiff should not thereafter carry out the contract, and it was clearly its duty then to give its approval. It continued to retain the $100 and to hold Cambell to his contract and yet failed to carry out the contract, and this situation continued for some three months after the attorney for the widow had advised plaintiff to carry out the contract. During all this time Cambell was able, willing and ready to carry out the contract.

We do not think the plaintiff should be permitted to authorize one of its officials to make contracts for the sale of land subject to the approval of its trustees, and then claim the right to withhold that approval indefinitely. It must, within a reasonable time, give or deny

its approval. And certainly it must be held upon the circumstances present, with a rising market, with no reason against, and no opposition from a beneficiary, that two months would have been a reasonable time for the plaintiff to have determined whether it should approve the contract, and thereafter to have effected the transfer. Any other conclusion would be most unfair to those with whom the plaintiff entered into contracts of sale. Our conclusions are: that contracts entered into by an official of a trustee within the power of the trustee and within the authority of the official, provided the trustee approve, will be deemed to be approved when such approval is expressly had, or may be reasonably implied from the circumstances; that where no time is specified for the fulfilment of the contract, it must be carried out within a reasonable time; that what is such reasonable time is primarily a conclusion of fact dependent upon the circumstances and evidence of the intention of the parties so far as the same can be ascertained, but where all the facts are present from which the conclusion of reasonable time was drawn, it will, on review, be deemed a question of law.

There is no error.

In this opinion the other judges concurred.