THE PORTLAND WATER COMPANY *vs.* THE TOWN OF PORTLAND.

First Judicial District, Hartford, May Term, 1922.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

In an action against a town upon a contract alleged to have been duly authorized by vote in town meeting, the court found that a warning of the meeting in specified terms was duly published in a newspaper published in a nearby city and duly posted on the signpost of the town. This finding was based on evidence from the editor of the paper with its files showing the printed warning, from the clerk's record of the minutes of the town meeting, and from a person who had seen the warning in the newspaper and upon the signpost; but there was no evidence to disprove the existence of the recorded return in writing of the posting and publishing of such warning as prescribed in § 252 of the General Statutes. *Held* that the finding was properly made upon the evidence, and that while the recorded return, if in existence, was the best evidence of the contents of the warning and its posting and publication, yet failure to require such proof was harmless error, since such return would be in the records of the defendant town and hence available to it to correct any mistake in the plaintiff's evidence.

The town meeting, which was the annual one for the election of town officers, was warned to be held at a hose house. At the meeting held at this place, no business other than election of officers was done, but the meeting adjourned to meet the following Saturday afternoon. The adjourned meeting, at which the vote in connection with the contract was passed, was called to order and held in the town-hall. *Held* that in view of the general usage or custom of towns in this State to follow the procedure adopted by the defendant in this instance—of which this court would take judicial notice—it was proper to hold the adjourned meeting in the town-

hall instead of at the place stated in the warning; and that in view of such custom it would have been questionable procedure to have held the meeting elsewhere.

The meeting was warned to consider the plaintiff's proposition "in regard to laying a water main by the Center Cemetery." The meeting voted that the selectmen be authorized and empowered to make a contract with the plaintiff "in regard to laying a water main by the Center Cemetery." *Held* that the warning furnished an ample basis for the action taken.

A municipality may in good faith make a valid, fair and reasonable contract with a corporation wherein, in consideration of the latter's promise to furnish a supply of water or light for municipal purposes, the municipality agrees to pay therefor, in addition to a specified sum of money, another sum each year equal to the amount of the tax for that year assessed against the company, provided the consideration for the agreement upon the part of the municipality is reasonably adequate. Such a contract is not void as an unlawful abatement of a tax.

Argued May 4th—decided August 4th, 1922.

ACTION to recover for water furnished to the defendant under and pursuant to a written contract between the parties, brought to and tried by the Superior Court in Middlesex County, *Wolfe, J.;* facts found and judgment rendered for the plaintiff for $561, and appeal by the defendant. *No error.*

*Thomas C. Flood,* for the appellant (defendant).

*Arthur L. Shipman* and *Farwell Knapp,* for the appellee (plaintiff).

CURTIS, J. The plaintiff claims that on October 21st, 1914, it entered into a written contract with the defendant town, the substantial terms of which are as follows: Whereas defendant town is desirous of certain extensions of the water mains and that additional hydrants be located in said town, which will require the expenditure of large sums of money by the plaintiff company and which the company is willing to install at its expense; now therefore, the parties, upon a named

consideration, agree that the plaintiff will install in Portland an additional water main in a specified location and additional hydrants at the annual rental of $30 per hydrant. The agreement recited that it should continue for fifteen years from its date, and as a part consideration therefor provided: "Said town will pay therefor, in addition to said hydrant rental as above stated, a sum of money annually which shall be equal to the tax annually assessed against said company by the assessors of said town on such portion of said company's assessed valuation of its property taxable within said town, as shall be in excess of sixty-five thousand dollars ($65,000). Said sum is hereby agreed upon as a reasonable return to the company for services to be rendered to the town hereunder."

If this agreement, signed by the plaintiff, and by the three selectmen of Portland claiming to act in behalf of the town, constituted a valid contract, then it is not questioned that the plaintiff was properly awarded the judgment for damages.

The defendant claims that such paper did not constitute a valid contract, because the selectmen who signed it had no legal authority to enter into such a contract, for the following reasons: 1. That the meeting which purported to authorize the selectmen to enter into such a contract was not a legal town meeting, because (a) it was not legally warned; (b) if legally warned, the adjourned meeting at which such action was taken was not a legal continuance of the original meeting; (c) that if claims (a) and (b) are untenable, then the terms of the warning of the meeting did not authorize the meeting to empower the selectmen to enter into a contract with the plaintiff as set forth in Exhibit A; (d) that the claimed contract, Exhibit A, is void as against public policy, because it, in effect, unlawfully abates a tax.

The defendant has filed a transcript of the entire evidence and has asked us to correct the finding in certain particulars. It is therefore desirable to establish the finding before proceeding with the consideration of other claimed errors. The defendant asks that certain paragraphs in its draft-finding be made a part of the finding. We have examined these paragraphs, but do not find that any of them, the facts in which do not already appear in the finding, are material to the decision of the issues involved. Two of these paragraphs are to the following effect: The only evidence offered to prove a certain fact was as follows (setting out the evidence). The trial court is not required to make such a finding. If the complaining party deems the evidence insufficient to support the fact, he should ask that the finding be corrected by striking out such fact. *Hartford-Connecticut Trust Co.* v. *Cambell,* 97 Conn. 251, 254, 116 Atl. 186.

We treat the 15th and 16th assignments of error as, in effect, a claim for a correction of the finding by striking out paragraphs 3 and 16 of the finding. Paragraph 3 reads: "Said warning was duly published in the *Penny Press* of the City of Middletown, and duly posted on the signpost of the Town of Portland." Chapter 138 of the Public Acts of 1907 (the statute applicable at the time of the execution of the alleged contract), reads in part as follows: "Notice of a town meeting shall be given by setting upon the signposts in the town and at such other place or places as may be designated as hereinafter provided, a printed or written warning signed by the selectmen, or a majority of them, and by publishing a like warning in a newspaper published in said town or having a circulation therein." The court found that the selectmen of Portland issued a warning for a town meeting on September 6th, in the following terms, in so far as relevant in this action:—

"Notice.

"Annual Town Meeting.

"The annual Town Meeting of the Town of Portland will be held on Monday the Fifth Day of October 1914 at the Hose House of Portland Hose Company No. 1, from 6 o'clock a. m. to 5 o'clock p. m., for the following purposes, to wit:

"To elect Town Officers as provided by law.

    *    *    *    *    *    *    *    *

"To consider the proposition of the Portland Water Company in regard to the laying of a water main by the Center Cemetery.

"Selectmen of the Town of Portland    { Luther Wilcox<br>George E. Stocking<br>George E. Williams."

The evidence shows that the editor of the *Penny Press* of Middletown, a witness, produced files of that paper of the dates of September 29th, 30th and October 1st, 1914, each containing a publication of the above notice. The trial court had judicial notice that Portland was a town adjoining Middletown and in intimate business and social relations with it. A duly-authenticated record of the town meeting of October 5th, 1914, was introduced, which disclosed that the warning of the meeting read by the clerk as the warning duly issued by the selectmen was in the above terms. From the above facts, the court properly found that the notice was duly published, that is, that the statutory requirements as to publication had been complied with.

As to that part of paragraph 3 which finds that the warning issued by the selectmen was "duly posted on the signpost of the town of Portland," this finding was supported by the testimony of a witness that he saw a notice for an annual meeting, the same notice as appeared in the *Penny Press*, on the signpost on September 29th, 1914. This testimony, in conjunction

with the facts stated above, sufficiently supports this finding.

The motion to strike out paragraph 16, which reads: "16. Said contract is a fair and reasonable one and was entered into by the parties in good faith, and the compensation agreed upon therein is reasonably adequate" —may conveniently be reserved for consideration later.

The defendant objected to the admission of the evidence underlying the findings as to the warning, because the plaintiff did not, before offering such evidence, negative the existence of a recorded "return in writing" of posting and publishing of such notice, as provided in § 252 of the General Statutes.

The court permitted proof of the warning by the plaintiff by testimony of witnesses, without negativing the existence of a recorded return. The recorded return, if in existence, would be the best evidence of the contents of the warning; however, as it was apparent that such recorded return, if in existence, was in the records of the defendant town and so available for its use to correct any error in the proof as to the terms of the warning or as to its posting or publication, the court deemed it proper to proceed as if dealing with a question as to the order of proof and to overrule this objection. This was a harmless error.

The following statement appears in the finding, and it might well be urged that the facts set forth therein were of themselves prima facie evidence to establish the facts of a legal warning for a town meeting: "Thereafter plaintiff offered, without objection, a copy of the record of said town meeting, duly authenticated, and such record disclosed that the warning of said annual town meeting, read by the clerk at such meeting as the warning duly issued by the selectmen, was in all respects, identical with the notice published in said *Penny Press* and posted upon said signpost, as herein-

before referred to." *Isbell* v. *New York & N. H. R. Co.*, 25 Conn. 556, 562; *Bloomfield* v. *Charter Oak Bank*, 121 U. S. 121, 130, 7 Sup. Ct. 865.

The remaining claims of error as to the admission of evidence relate to rulings which involve merely questions of the order of proof, or rulings as to relevancy which were within the discretion of the court. There were no prejudicial errors in the rulings upon the admission of evidence.

The facts found establish that the town meeting held on October 5th, 1914, at the hose house of Portland Hose Company No. 1, was a legally warned and lawful meeting. At this annual town meeting, at which the annual election of town officers occurred, and no other town business was done, Robert S. Mitchell was moderator and the following vote was passed: Voted: that (when) the meeting should adjourn it should be adjourned to meet Saturday afternoon at two o'clock, October 10th, 1914. On Saturday, October 10th, 1914, at two o'clock, moderator Robert S. Mitchell called to order the adjourned annual town meeting in the town-hall of Portland. The warning was read by the clerk. The meeting then proceeded to do the large amount of town business that had been specified in the warning.

The trial court held that this meeting was a lawful adjourned town meeting. The defendant claims that under the facts found, it was not a lawful meeting. The question now presented is whether under the vote of adjournment, which did not specify where the adjourned meeting should be held, an adjourned town meeting could be held at any place other than the hose house mentioned in the warning. There are certain usages or customs that have developed as to town meetings in Connecticut towns, so well established that courts may take judicial notice of them: 1. That

where there is a town-hall in a town, town meetings for business purposes, as distinguished from election purposes, are there held.   2. That town business is not ordinarily done in the larger towns, of which Portland is one, on the day of the annual town meeting, when the town election is held.   3. That the annual town meeting is ordinarily adjourned for the consideration of town business until a later day.   4. That the annual town meeting involving an election of town officers is often warned in the large towns to be held in some building, other than the town hall, convenient for the voters and for the conduct of an election. Taking into consideration these usages, so well established as to be of common knowledge, they may be deemed to be attached as a setting or a part of the above vote to adjourn the annual town meeting.   In a Connecticut town which has a town-hall, the words "town meeting" connotes a meeting in the town-hall. Therefore the adjournment of the annual town meeting at the election place to a later day for purposes other than carrying on a town election, would, by common knowledge, mean to the voters of Portland an adjourned meeting to be held in the town-hall.   We are of the opinion that the voters of Portland would properly understand that the town-hall, the accustomed place for doing town business, under the adjournment vote would be the place for the adjourned meeting, and not the hose house, the election place.   In view of these customs, it would have been a questionable procedure if the moderator and town clerk had attempted to conduct the adjourned meeting in the hose house as counsel for the defendant contends they should have done.   We are of the opinion, therefore, that the court correctly held that the adjourned town meeting as held in the town-hall was a legal town meeting.

The defendant claims that the terms in the warning,

"to consider the proposition of the Portland Water Company in regard to laying a water main by the Center Cemetery," did not authorize the passage of the following vote by the town meeting. "Voted, that the selectmen be authorized and empowered to make a contract with the Portland Water Company in regard to laying a water main by the Center Cemetery." The terms of the warning, when reasonably considered, informed the voters that the Water Company proposed certain terms upon which they would lay a water main by the Center Cemetery, and that the meeting would be asked to act upon the proposal. We are satisfied that the warning furnished an ample basis for the action taken. As we said in *Bull* v. *Warren*, 36 Conn. 83, 85: "It has never been holden or supposed here, or in the community, that any technical nicety was necessary in drawing the notice [warning], or in specifying the objects of the meeting; or that the inhabitants when assembled could be controlled to any extent in their action by the form or phraseology of the notice, if the essential elements of the object were embraced in it."

There remains for consideration the question raised by the request that we strike the 16th paragraph from the finding, which reads: "Said contract is a fair and reasonable one and was entered into by the parties in good faith, and the compensation agreed upon therein is reasonably adequate." There was no pleading attacking the validity of the contract because unfair or unreasonable; apparently, however, this paragraph was inserted because the court deemed it essential to negative any claim that the contract was intended as a cover of an illegal attempt to exempt the company's property from taxation. The defendant offered no evidence on the trial, and an examination of the evidence presented shows that the court could have rea-

sonably made such finding if it was a relevant question of fact.

The defendant further claims that "the contract made by the selectmen is void as against public policy, and is, in effect, an unlawful abatement of a tax." In relation to claims of this character 3 Dillon on Municipal Corporations (5th Ed.) § 1310, speaks as follows: "When a corporation constructs water works or other public utilities for the purpose of supplying a municipality and its inhabitants, it brings into existence property which becomes the subject of taxation within the municipal limits. It is apparent that inasmuch as the primary purpose of the corporation is to furnish water or light to a city and its inhabitants upon reasonable terms, the cost of the water or light to the city and its inhabitants is necessarily increased to the extent to which its property is subjected to taxation. In undertaking to construct water works and lighting plants, it has consequently sometimes been stipulated that in consideration of the furnishing of water and light to the municipality, *the city will pay therefor a sum equal to the tax* assessed against the company by the city upon the value of its property devoted to these purposes. Such agreements have been attacked as ultra vires on the part of the municipality as exempting property from taxation contrary to the provisions of law; but the courts have held that a municipality may make a valid and fair and reasonable contract with a corporation wherein, in consideration of the contract of the company to furnish a supply of water or light for municipal purposes, it agrees to pay therefor, in addition to a specified sum of money, another sum each year equal to the amount of the tax for that year assessed against the company, provided that the consideration for this agreement upon the part of the municipality is reasonably adequate. Such a contract

when made in good faith and when its terms are reasonable and fair has been held not to be contrary to public policy, and not in itself to be an exemption of the property from taxation contrary to the provisions of the law. But the decisions which have recognized the validity of such contracts have always been careful to declare that it is essential that the contract should not be intended as a cover of an illegal attempt to exempt the company's property from taxation." See also *Maine Water Co.* v. *Waterville,* 93 Me. 586, 45 Atl. 830; *Portland* v. *Portland Water Co.,* 67 Me. 135; *Cartersville Improvement, G. & W. Co.* v. *Cartersville,* 89 Ga. 683, 16 S. E. 25; *Grant* v. *Davenport,* 36 Iowa, 396; *Utica Water-Works Co.* v. *Utica,* 31 Hun (N. Y.) 426; *Alpena City Water Co.* v. *Alpena,* 130 Mich. 518, 90 N. W. 323; *Washburn* v. *Washburn Water-Works Co.,* 120 Wis. 575, 98 N. W. 539; *Ludington Water Supply Co.* v. *Ludington,* 119 Mich. 480, 78 N. W. 558; *Monroe Water-Works Co.* v. *Monroe,* 110 Wis. 11, 85 N. W. 685; *Frankfort* v. *Capital Gas & Electric Light Co.,* 29 S. W. Rep. (Ky.) 855, S. C. 96 S. W. Rep. 870; *Dayton* v. *Bellevue Water Fuel Gaslight Co.,* 68 S. W. Rep. (Ky.) 142. Under the law, well stated in the above quotation, this claim is not well taken.

There is no error.

In this opinion the other judges concurred.