120

Pietro Mancini et als.
vs.
Yorkshire Insurance Co.
Ltd., of York, England
} Eq. No. 11464.

Pietro Mancini et als.
vs.
United States Fire Insurance Co. of New York
} Eq. No. 11465.

January 30, 1933.

CHURCHILL, J. Further heard on bills, answers and proofs.

Since the filing of a previous rescript a further hearing was had on the issues not considered at the former hearing.

The answers set up incendiarism on the part of the complainants but it was not pressed at the hearing.

Some argument was made that the proofs of loss were not sufficient and did not conform to the requirements of the policies but the respondents take nothing on this point since their attitude from the time of notification of loss was that of non-liability.

The respondents also say that the assignment by Silvestro and Cioci to Mancini of an interest under the lease assigned to them was in violation of the provisions of the lease inasmuch as that instrument provided that the consent of the lessor was required after one original assignment had been made.

In answer, it is sufficient to say that a stranger cannot take advantage of this provision.

The main contention revolves around the matter of the loss sustained by the complainants.

The building involved was an ice-house used by the complainants in their business. It was built by a predecessor of the complainants. The lease under which the complainants held the land was executed October 27, 1925, and at the time of loss had nearly five years to run. This instrument purported to convey only a parcel of land without mention of build-ings or improvements. By a subsequent clause the lessees were given the right to build one or more ice-houses on the leased land, the lessees to pay the taxes on such buildings and to surrender possession of the premises at the end of the lease.

When Silvestro and Cioci took over the lease from Frederick J. and Charles L. Walsh, Jr., on October 31, 1925, they paid them $3,000 in cash and $3,000 in two promissory notes. A previous receipt executed by Frederick J. Walsh on October 13, 1925, recited that the amount paid on that date was to bind the contract for "the sale of ice-house and transfer of lease."

The complainants produced testimony of an expert witness, acquainted with the structure of the ice-house, to the effect that its sound value at the time of loss was approximately $4,000.

The respondents did not produce any testimony on their part of the value of the structure destroyed but put in evidence showing that the rate of depreciation of ice-houses of the character of the one destroyed was at the rate of 50% over a period of 10 years, and also evidence relating to the foundation and its cost.

The respondents contend that under the policies and the law applicable to the situation presented here of a building on leased land, the value of the leasehold interest is the measure of the loss, citing:

Sievers vs. Union Assurance Society of London, 20 Cal. App. 250;

Lighting Fixture Supply Co. vs. Fidelity Union Fire Ins. Co., 55 Fed. (2nd) 113;

and other cases to the same effect.

The complainants rely on a line of cases to the contrary, of which

Fowle vs. Springfield Fire & Marine Ins. Co., 122 Mass. 191;

Plum Tree Line Company vs. Keeler, 92 Conn. 1;

Kludt vs. German Mutual Fire Ins. Co., 152 Wis. 637,

are examples.

In its determinative features *Fowle* vs. *Springfield Fire & Marine Ins. Co.*, 122 Mass. 191, is closely in point. In that case the company insured the plaintiffs on "their two-story * * * building occupied by them * * * situate on leased land." The lease ran for 10 years and had less than 6 months to run at the time of loss. The lessees were given the right to erect a building on the leased land (which building was the object of the insurance) and at the end of the term the building was to revert to the lessor. There was a judgment for the plaintiffs.

The Court said:

"They (the lessees) had erected at their own expense and used and occupied it in their business as a carpet store. They might wish to rebuild it or to indemnify themselves for their expenditure in the event of loss by fire. In either case, it was proper for them to procure insurance and they might lawfully do so to the extent of the value of the building. It is clear they would derive benefit from its continuing to exist and would be injured by its destruction."

In the instant case, it is important to determine whether by the contract of insurance the lessees insured the ice-house or insured a leasehold interest.

The contract to insure was a contract to insure an ice-house and the coverage clause in each policy read:

"1500 On frame ice-house and additions thereto structurally attached situated Whipple Court * * *."

At the time the contract for insurance was made the agent of the companies knew the building on which insurance was sought was on leased land.

The reasons advanced in *Fowle* vs. *Springfield Fire & Marine Insurance Co.*, 122 Mass. 191, and in the other cases cited by the complainants, are so pertinent to the facts and to the insurance contracts involved in the instant case that it is unnecessary to repeat them. It is enough to say that the general rule, that where a leased building is insured for the lessee, unless otherwise limited in the contract, the insurer is liable for the sound value of the building in case of loss, is a sounder rule.

A decree may be presented for reformation of the policies as prayed for and for payment to the complainants by each of the insurers of the sum of $1500 with interest at 6 per cent from the date of the loss.

See 7 Couch, Cyclopedia Insurance Laws, Sec. 1865 and notes 21, 22 & 23 and cases cited.

For complainants: Philip S. Knauer & DePasquale.

For respondents: William A. Gunning.