HOBART D. VAN DEUSEN ET AL. *v.* TOWN OF WATERTOWN ET AL.
(AC 19965)

Spear, Mihalakos and Zarella, Js.

Argued December 1, 2000—officially released March 13, 2001

*M. Leonard Caine III*, for the appellants (intervening defendants).

*Thomas G. Parisot*, with whom, on the brief, was *John H. Cassidy, Jr.*, for the appellees (plaintiffs).

*Franklin G. Pilicy*, for the appellees (defendants).

*Opinion*

ZARELLA, J. This case arises from the action of the Watertown town council (council) approving an ordinance for the establishment of an historic district in the town of Watertown (town). On appeal, the dispositive issue is whether § 309 of the charter of the town of Watertown[1] applies to the adoption of an ordinance

---

[1] Section 309 of the charter of the town of Watertown provides in relevant part: "The electors shall have the power to approve or reject at a referendum, any ordinance or other measure passed by the Council, except an ordinance or resolution appointing or removing officials, appropriating money, authorizing the levy of taxes or fixing the tax rate. . . . Within twenty (20) days after the publication of an ordinance or other measure which is subject to referendum, a petition may be submitted to the Town Clerk. Such petition shall be addressed to the Council and shall request that such ordinance or other measure shall be repealed by the Council or be submitted to a vote of the electors, and shall be signed in ink or indelible pencil by qualified electors of the town equal in number to at least five (5%) percent of the electors on the voting list. The Town Clerk shall proceed as prescribed by General Statutes as to referenda. If the number of qualified signatures, as certified by the Town Clerk, equals or exceeds five percent of the electors on the voting list and the Council fails or refuses to repeal such ordinance or other measure at its meeting next following the delivery of the petition to its clerk the question of repeal shall be submitted to a vote of the electors at a referendum which must be called by the Council to be held not less than ten (10) nor more than twenty (20) days after said meeting of the

establishing an historic district pursuant to General Statutes § 7-147a et seq.[2] We conclude that § 309 of the charter is not applicable and, therefore, affirm the judgment of the trial court.

The relevant facts and procedural history are as follows. In 1996, the council of the defendant town of Watertown[3] appointed an historic district study committee (committee) that investigated the creation of an historic district. The committee generated a report, which it disseminated to the town's planning and zoning commission, the fire district and the Connecticut historical commission. Each of those agencies approved the creation of the historic district. The committee then held a public hearing after which it submitted the report to the council and the town clerk. All of the previously mentioned steps were taken in accordance with General Statutes § 7-147b (a) through (f).

Pursuant to § 7-147b (g),[4] the town clerk then mailed ballots on the question of establishing the historic dis-

Council. Such referendum shall be held in conformity with the provisions of the General Statutes relating to referenda. Upon the submission of the petition to the Town Clerk as above provided, the ordinance or other measure shall remain without effect until either (a) the first meeting of the Council following delivery of the petition by the Town Clerk to the clerk of the Council with a certification showing that the number of signatures on the petition is insufficient which fact shall be recorded upon the minutes of the Council, or (b) the question of repeal has been decided in the negative by a vote of the electors at the referendum at which not less than twenty-five (25%) percent of the electors on the voting list shall have voted."

[2] General Statutes § 7-147a (b) provides: "Any municipality may, by vote of its legislative body and in conformance with the standards and criteria formulated by the Connecticut Historical Commission, establish within its confines an historic district or districts to promote the educational, cultural, economic and general welfare of the public through the preservation and protection of the distinctive characteristics of buildings and places associated with the history of or indicative of a period or style of architecture of the municipality, of the state or of the nation."

[3] Watertown town clerk Dolores LaRosa and Watertown registrars of voters Walter A. LeMay and Armand Madeux also are defendants in this appeal.

[4] General Statutes § 7-147b (g) provides in relevant part: "The clerk or his designee shall, not later than sixty-five days from receipt of such report,

trict to each real property owner of record in the proposed district. Seventy-two percent of those owners approved of establishing the proposed district. On January 6, 1997, the council approved, by a vote of six to three, the historic district ordinance in accordance with § 7-147b (i).[5]

Following the approval of the ordinance, the town received a petition seeking the repeal of the ordinance pursuant to § 309 of the charter. The defendants scheduled a referendum for March 13, 1997, in which all of the registered voters in Watertown would be allowed to vote on the repeal. The plaintiffs,[6] all of whom are residents, taxpayers and voters of Watertown, responded by bringing an action seeking a declaratory judgment and injunctive relief. At trial, they argued that § 309 of the town charter is inapplicable to an ordinance establishing an historic district pursuant to § 7-147a et seq. They sought an injunction prohibiting the defendants from proceeding with the referendum. On March 10, 1997, the court, *Kulawiz, J.,* entered a temporary injunction restraining the defendants from holding the referendum on the ordinance's repeal.

On October 7, 1997, the intervenors, Linda Lane Merriman and M. Heminway Merriman II, separately filed

mail ballots to each owner of record of real property to be included in the proposed district or districts on the question of creation of an historic district or districts, as provided for in sections 7-147a to 7-147k, inclusive . . . ."

[5] General Statutes § 7-147b (i) provides in relevant part: "If two-thirds of all property owners voting cast votes in the affirmative, the legislative body of the municipality shall by majority vote take one of the following steps: (1) Accept the report of the committee and enact an ordinance or ordinances to create and provide for the operation of an historic district or districts in accordance with the provisions of this part; (2) reject the report of the committee, stating its reasons for such rejection; (3) return the report to the historic district study committee with such amendments and revisions thereto as it may deem advisable, for consideration by the committee. . . ."

[6] The plaintiffs are Hobart D. Van Deusen, Nancy Van Deusen, Robert J. McCarthy, Iphigenia M. Rigopulos, William Piknosh, Ronald D. Mayne and Carol Gilbert.

motions to intervene, which the court, *Gill, J.*, granted on December 1, 1997.[7] The case went to trial before Judge Kulawiz on October 22, 1997. Prior to the rendering of judgment, the intervenors and the defendants filed separate motions for a new trial pursuant to General Statutes § 51-183b.[8] The court, *Vertefeuille, J.*, granted their respective motions on November 23, 1998. The second trial commenced on January 7, 1999, and Judge Vertefeuille rendered judgment in a memorandum of decision dated July 22, 1999.

The court determined that the referendum provision of § 309 of the charter is inapplicable to the adoption of the historic district ordinance because (1) § 7-147a et seq. provides a detailed and comprehensive statutory scheme for establishing historic districts, and (2) that statute, as written, evidences the legislature's clear indication that "it intends to occupy the entire field of regulation of establishment of historic districts." For those reasons, the court enjoined the defendants from holding a referendum on the repeal of the ordinance. The intervenors thereafter appealed from the judgment.

On appeal, the intervenors and the town argue that the Home Rule Act, General Statutes §§ 7-187 through 7-201, and General Statutes § 7-157 (a)[9] authorize the

---

[7] Linda Lane and M. Heminway Merriman II are the appellants in this appeal. We also note that they are taxpayers, voters and owners of real property located within the historic district in Watertown.

[8] General Statutes § 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

[9] General Statutes § 7-157 (a) provides in relevant part: "Ordinances may be enacted by the legislative body of any town, city, borough or fire district. Any such ordinance so enacted . . . shall become effective thirty days after publication thereof in some newspaper having a circulation in the municipality in which it was enacted, provided, upon a petition of not less than fifteen per cent of the electors of such municipality filed with the town or borough clerk, as the case may be, within thirty days after the publication

use of the referendum to repeal an ordinance that the legislative body of the town approved and, therefore, § 309 of the charter applies to the historic district ordinance. The plaintiffs argue that the statutory scheme prescribed in § 7-147a et seq. requires a majority vote of the council, the town's legislative body, as the final act for establishing an historic district and, therefore, the statutory scheme does not allow for a referendum pursuant to § 309 on the council's action.

The determination of whether the charter's referendum provision applies to an ordinance passed pursuant to § 7-147a et seq. is "a question of statutory interpretation over which our review is plenary." *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 690, 755 A.2d 850 (2000). Section 7-147a et seq. provides a comprehensive, detailed scheme by which a municipality may establish an historic district within its borders. One of the last steps of the lengthy process requires the town clerk to "mail ballots to each owner of record of real property to be included in the proposed district or districts on the question of creation of an historic district or districts . . . ." General Statutes § 7-147b (g). Following the affirmative vote of at least two-thirds of all real property owners casting votes, "the legislative body of the municipality shall by majority vote take one of the following steps: (1) Accept the report of the committee and enact an ordinance or ordinances to create and provide for the operation of an historic district or districts in accordance with the provisions of [General Statutes §§ 7-147a through 7-147k]; (2) reject the report of the committee, stating its reasons for such rejection; (3) return the report to the

---

of such ordinance, asking that the same be submitted to the voters of such municipality at its next regular or special meeting, it shall be so submitted and in such event shall not become effective unless a majority of the voters voting at such meeting vote in favor thereof. . . . Cities and other municipalities whose charters provide for the manner in which they may enact ordinances may enact ordinances in such manner."

historic district study committee with such amendments and revisions thereto as it may deem advisable, for consideration by the committee. . . ." General Statutes § 7-147b (i). Section 309 of the charter provides in relevant part that "[t]he electors shall have the power to approve or reject at a referendum, any ordinance . . . passed by the Council . . . ."

The parties do not dispute that the town properly followed all of the procedures set forth in § 7-147a et seq. Rather, the intervenors and the town argue that § 309 of the charter requires the town to take an additional step not included in the statutory scheme before an historic district may be established in Watertown. We disagree.

We first note that § 7-147a et seq. preceded the adoption of § 309 of the town charter. Then Governor John Dempsey signed into law Public Acts 1961, No. 430, codified as § 7-147a et seq., on June 14, 1961. Watertown's first charter was adopted on July 6, 1961. Consequently, when the General Assembly established the statutory scheme now at issue, it would not have been aware of § 309 of the charter because the charter had yet to be adopted. We therefore do not presume that the legislature was cognizant of the referendum provision of § 309 when it enacted the statutory scheme.

Moreover, the legislature provided that the final act in establishing an historic district shall be the affirmative majority vote of the legislative body of the municipality. See General Statutes § 7-147b (i). Various sections of the General Statutes define the term "legislative body," as applied to a municipality, as "the board of aldermen, *council* or other body charged with the duty of making annual appropriations . . . ." (Emphasis added.) General Statutes § 1-1 (m); see also General Statutes §§ 3-76c (a), 7-193 (a) (1), 7-370c, 7-425 (3), 7-482 (g) and 8-

187 (2), and General Statutes (Rev. to 1997) § 32-222 (x), now (y).

Our Supreme Court has had the occasion to define the term "legislative body" in an analogous situation in *Sadlowski* v. *Manchester*, 206 Conn. 579, 538 A.2d 1052 (1988). In that case, the Manchester board of directors approved the issuance of tax increment bonds pursuant to General Statutes § 8-192. Although the statutory scheme merely required the legislative body of the municipality to approve the bonds before they were issued, a group of residents sought to have their issuance put to a referendum pursuant to § 5-25 of the charter of the town of Manchester.[10] The court framed the issue as "how to reconcile this reference to 'legislative body' [in § 8-192 (a)] with the provisions of a local charter that stipulate that municipal bonds generally must be authorized by a two step process including not only the approval of the local board of directors but also the favorable action of the voters of the town." *Sadlowski* v. *Manchester*, supra, 580–81.

The court concluded that § 5-25 of the Manchester town charter was inapplicable to tax increment bonds issued pursuant to § 8-192 because the charter provision applies to "general municipal obligation bonding that constitutes a charge on the town's taxpayers"; id., 586; not to tax increment bonds, which are paid entirely by revenues from municipal development projects. Id.,

---

[10] "Section 5-25 of the Manchester town charter provides in relevant part: BORROWING FOR CAPITAL IMPROVEMENTS. To finance all or any part of the expense of any capital project which the Town may lawfully construct or acquire, the Town may incur indebtedness by issuing its negotiable bonds . . . subject to the limitations of the General Statutes. Such bonds shall be authorized by a majority vote of all the members of the Board of Directors. No bonds . . . shall be issued, however, until the project for which the bonds . . . are to be issued has been favorably acted upon by the voters of the Town at any regular or special election duly warned for that purpose." (Internal quotation marks omitted.) *Sadlowski* v. *Manchester*, supra, 206 Conn. 582 n.3.

586–87. The court further determined that the term "legislative body" does not encompass the legislative process of voters acting on a referendum.[11] Id., 589.

Although *Sadlowski* is factually different from this case, the principles articulated in *Sadlowski* apply to the present case. As in *Sadlowski*, this case involves a statute that requires a majority vote of the legislative body of the municipality as the final act for approval of a statutory measure and a seemingly conflicting provision of a town charter that mandates an additional step, not prescribed in the statutory scheme, of putting the approved measure up for a referendum by the municipality's voters. Under the authority of *Sadlowski*, the result must be the same in the present case. To reconcile the statutes and the charter, the Watertown town council must be the sole legislative body of Watertown for the purposes of § 7-147a et seq. Because a referendum is not a "legislative body"; id., 593; § 309 of the charter of the town of Watertown has no place in the comprehensive, detailed statutory scheme of § 7-147a et seq. We conclude that § 309 of the charter is inapplicable to the adoption of the historic district ordinance pursuant to § 7-147a et seq.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The court was responding to the trial court's conclusion that the referendum process under § 5-25 of the Manchester town charter was equivalent to a town meeting under General Statutes § 7-193 (a) and, therefore, under subsection (a) (1) (D) of that statute, the legislative body for Manchester consisted of the board of directors and the referendum process. *Sadlowski* v. *Manchester*, supra, 206 Conn. 589.