[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an administrative appeal arising out of the Watertown Fire District Committee and Zoning Commission of Watertown (hereinafter "Commission") issuance of a special use permit on an application filed by the respondent, Sprint Spectrum, L.P. d/b/a Sprint PCS (hereinafter "Sprint"). That application requested the Commission's approval of a wireless telecommunications facility within the First Congregational Church of Watertown (hereinafter "Church") edifice, located on a parcel of land within a zoning district designated R-10F (a residential district). The appellants allege in their second amended appeal that the defendant Commission acted illegally, arbitrarily and in abuse of its discretion in that it failed to publish in a newspaper, notice of the public hearing held on July 12, 1999 on Sprint's application, as required by § 8-3c (b) of the General Statutes. They assert that the said special use permit approved construction of what is actually a telecommunications tower, as opposed to an antenna, and said tower does not conform to the Commission's zoning regulations including Sections 42(c)(4), 42(D), 42(G), 42(H), and 42(I) of said regulations, in that it granted an application approving the placement of a wireless telecommunications facility in a designated historic district without a showing that no other alternative is possible in violation of Section 42(L); that it granted the respondent Sprint's application when the appellants, as abutting landowners, did not receive notice of any hearings by certified mail pursuant to § 8-3c (b) of the General Statutes and Administrative Policy #1 (AP (1)-1) of the regulations; and that the Commission lacked jurisdiction to grant the application, in that the Personnel Communication Spectrum (PCS) facility for which the application was granted is functionally equivalent to cellular technology CT Page 2072 and, therefore, pursuant to § 16-50g et seq., of the General Statutes, the State Siting Council has exclusive jurisdiction to grant such applications.
The appellants are the owners of a certain piece or parcel of real estate located within the Watertown Fire District, which piece or parcel of land abuts land owned by the respondent, Church. Sprint asserts that the appellants' land is held for business purposes. As abutting owners, the appellants are statutorily aggrieved under § 8-a (a)(1). SeeZoning Board v. Planning Zoning Commission, 27 Conn. App. 297, 301;McNally v. Zoning Commission, 225 Conn. 1, 8. The court will address the appellants' complaints in the order and under the titles briefed.
"A. Section 8-3 (c)(b) of the Connecticut General Statutes requires theDefendant zoning commission to have given published notice of the publichearing held on July 12, 1999."
The appellants argue that subsection (b) provides, inter alia: "The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception. . . . Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing." Compliance with prescribed and notice requirements is a prerequisite to a valid action by a zoning commission, and failure to give proper notice constitutes a fatal jurisdictional defect. See Wright v.Zoning Board of Appeals of the Town of New Fairfield, 174 Conn. 488, 491
(1978); Maher v. Town Planning Zoning Commission, 154 Conn. 420, 425
(1967). Because a notice of a public hearing is designed to safeguard the public's opportunity to participate, the appellants' voluntary participation in the hearing held by the board neither cured the jurisdictional defect; Schwartz v. Hamden, 168 Conn. 8, 15 (1975); nor does that participation stop him from raising it after the adverse board decision.[1] Slagle v. Zoning Board of Appeals, 144 Conn. 690, 693
(1957), 693; Koepke v. Zoning Board of Appeals, 223 Conn. 171, 176-77
(1992). The appellants emphasize that the publication of notice requirements as set forth in § 8-3c (b) of the General Statutes is also recited in the zoning commission's own regulations governing special use permits, i.e., paragraph 52.4 of those regulations.
The Commission responds that with land use decisions, the critical questions are what notice was mandated by the statute and what notice was given. (Fuller, Land Use Law and Practice, (2d Ed. 1999), c. 17.1.) The CT Page 2073 June 28th public hearing was adjourned and continued to July 12, 1999, because of a lack of a quorum. Although not required by the zoning ordinances, the District published notice of the public hearing and the continuation thereof in the office of the district clerk. Any reading of the noted statute, whether it be careful or perfunctory, does not disclose any requirement of additional notice when a public hearing is continued to a subsequent date. Our Supreme and Appellate Courts have failed to address this issue. However, at least two coordinate courts of our state have held that the statute does not require additional notice publication. This court finds that the continuance of the June 28th
public hearing to July 12, 1999 was exactly that, a continuance which did not require the publication of the second notice. It would be unreasonably burdensome to require the Commission to publish a new legal notice whenever a public hearing is continued to another date. See Eidinv. Montville Planning Zoning Commission, 1999 WL 547541 (Conn.Super.) p. 3.
The appellants contend that the Commission's failure to notice each of the continuations deprived the agency of jurisdiction. Section 8-7 of the General Statutes provides the requirement for noticing a public hearing but, again, that statute is silent with respect to notice of a continuation of that public hearing. The notice provisions of that section apply only to the initial public hearing and do not apply to the continuation thereof. Raczkowski v. Naugatuck Planning ZoningCommission and Nichols Realty Company, 1997 WL 471797 (Conn.Super.) p. 8. Notice is adequate if it fairly and sufficiently apprises those who may be affected by it of the nature and character of the action proposed, to make possible intelligent preparation for participation in the hearing. Kleinsmith v. Planning Zoning Commission, 157 Conn. 303,310 (1968). Passero v. Zoning Commission, 155 Conn. 511, 514 (1967), cert. denied, 390 U.S. 1004, 88 S.Ct. 1248, 20 L.Ed.2d 104.
The court is satisfied that the notice requirements of § 8-3c (b) of the General Statutes have been satisfied and that no published notice of the continuance of the public hearing is necessary or mandated.
"B. The Defendant Zoning Commission is required to have given writtennotice of Sprint's application to the [appellants] as abuttinglandowners, by virtue of their own `Administrative Policy #1'incorporated into the Watertown Fire District Zoning Regulations."
The appellants continue to cite to § 8-3c (b) and its language of "may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the CT Page 2074 hearing." The Commission has, in fact, incorporated this provision into its regulations through "Administrative Policy #1," which became effective on August 21, 1992, and which provides for such notice to owners of all property adjacent to, directly across the street from and within two hundred fifty feet from the lot or tract of land that is subject of this submission. This hypothesis has managed to enter this appeal through a "SECOND AMENDED APPEAL," dated September 24, 2001.
Our decisions have consistently distinguished between notice to the general public and personal notice. The Fire District's administrative policy requires written notice of public hearing on a special permit application be provided to abutting landowners. However, the statutes do not authorize local zoning regulations that require notice of anAPPLICATION. The Fire District's administrative policy is simply that, a policy. See Fuller, § 17.1 (discussing that local notice requirements beyond § 8-3c (b) are void). Sprint's failure to provide notice of the special permit application to property owners within two hundred fifty feet of the church in accordance with the Fire District Policy is not a jurisdictional defect. See Mobley v. Metro Mobile CTS of FairfieldCounty, Inc., 216 Conn. 1, 9-10 (1990). Certain it is that the only notice of Constitutional dimension is the notice of the HEARING, not the notice of the FILING OF THE APPLICATION. Once again, the purpose of such Constitutional notice is to advise all affected parties of their opportunity to be heard and be apprised of the relief sought. HartfordElectric Light Co. v. Water Resources Commission, 162 Conn. 89, 100
(1971); see also Wright v. Zoning Board of Appeals, 174 Conn. 488, 491
(1978). That required notice, however, has traditionally been held to apply to notice of the hearing. It does not extend to notice of a pre-hearing application as well.
Administration Policy #1 was adopted on August 3, 1992, under Section 72, "Administration," specifically paragraph 72.6, "Referrals." It isnot included as an amendment of the regulations which were adopted April 9, 1973 and declared effective on April 13, 1973. It is a district administrative policy "accompanying the zoning regulations" of the District.
While permitted by § 8-3c (b), the Fire District's zoning regulations do not require that written notice of a public hearing on a special permit application be provided to abutting landowners. Any such requirement would certainly have been included in Section 52.4.2 of the zoning regulations, under the heading, "Hearing, Decision and Notice," which governs the Commission's review of special permit applications. The absence of a written notice requirement to neighbors such as the CT Page 2075 appellants in the zoning regulations is, according to Sprint, dispositive of the jurisdictional claim. The silence in the regulations on that written notice requirement" to abutters clearly demonstrates a fatal flaw in the jurisdictional argument.
The appellants have not raised any due process violations in any documents before the court. Sprint has, nevertheless, chosen to treat that tactic as being pursued and has responded. There cannot be any serious argument about the appellants' actual notice and the opportunity to be heard.
Due process does not require actual notice to those who have an interest in or who may be affected by the proposed action of a zoning agency. Double I Limited Partnership v. Plan Zoning Commission of theTown of Glastonbury, 218 Conn. 65, 77 n. 14 (1991); Jarvis Acres, Inc.v. Zoning Commission, 163 Conn. 41, 47 (1972). Attendance at a hearing may constitute a waiver of any defect in personal notice where such notice may be required by regulation.[2] Sachem's Head Assn. v.Lufkin, 168 Conn. 365, 370 (1975); Schwartz v. Hamden, 168 Conn. 8, 15
(1975).
Assuming, arguendo, that personal notice of the application was mandated as claimed, such defect was waived when the appellants appeared at the hearing and testified. In terms of due process, no prejudice has been established. The appellants cannot prevail on this issue.
"C. The site of the telecommunications facility at issue is containedin an officially created historic district, which was not acknowledged bythe Defendant Zoning Commission, and in granting the Defendant Sprint'spermit the Defendant Zoning Commission violated Section 42(L) of its ownregulations."
Section 42(L) of the Zoning Regulations of the Watertown Fire District is entitled "Historic District and Scenic View" and states that: "No such [telecommunications] facility shall be constructed in a designated historic district or in a scenic view as indicated in the Watertown Plan of Development unless no other alternative is possible."
In January of 1997, before the submission of Sprint's application, the town adapted ordinance number 01-06-97-209 (the Historic District Ordinance) which created an official historic district encompassing both the respondent church and the appellants' property. The ordinance was passed pursuant to procedures set forth in § 7-147 et seq. of the General Statutes. It was not only passed before the defendant Sprint's CT Page 2076 application but has been the topic, according to the appellants, of extended public controversy. It was tested in Hobart D. Van Deusen v.Town of Watertown, Superior Court, judicial district of Waterbury, Docket No. 138135, (July 22, 1999, Vertefeuille, J.).
The appellants continue on that the existence of the Watertown's Historic District Ordinance was not acknowledged by any party or person during any of the proceedings relating to Sprint's application in which Sprint stated that "to the best of our information and belief, the church is not located within a designated historic district or in a scenic view as indicated in the Watertown Plan of Development."[3] Sprint's engineer reported that there were three possible alternatives to the selection of the church as a site of the telecommunications facility. They were considered and rejected for various and sundry reasons. They hypothesize that it is difficult, if not impossible, to completely discern from the record whether no other alternative is possible for the placement of a telecommunications facility in the church.[4]
The respondents rely to a great extent upon a premise they offer that there was no such district at the time of Sprint's application or approval. A chronology of the events and significant dates in the establishment of the district is indeed appropriate. In 1996, the legislative council of the respondent, Town of Watertown, appointed an historic district study committee (hereinafter "committee") that investigated the creation of an historic district. The committee generated a report which it disseminated to the town's planning and zoning commission, the Fire District and the Connecticut Historic Commission. Each of those entities approved the creation of the historic district. The committee then held a public hearing after which it submitted the report to the council and to the town clerk. All of the previously mentioned steps were taken in accordance with § 7-147b (a) through (f) of the General Statutes.
In accordance with subsection (g) of the cited statute, the town clerk then mailed ballots on the question of establishing the historic district to each real property owner of record in the proposed district. Seventy-two percent of those owners approved of establishing the proposed district. On January 6, 1997, the council approved, by a vote of six to three, the Historic District Ordinance in accordance with § 7-147b
(i).
Following the approval of the ordinance, the town received a petition seeking the repeal of the ordinance pursuant to § 309 of the town charter. The petitioners scheduled a referendum for March 13, 1997, in CT Page 2077 which all of the registered voters in Watertown would be allowed to vote on the repeal. The appellants therein, all of whom were residents, taxpayers and voters of Watertown, responded by bringing an action seeking a declaratory judgment and injunctive relief. At trial, they argued that Section 309 of the town charter is inapplicable to an ordinance establishing an historic district pursuant to the cited section of the statute. On March 10, 1997, the court, Kulawicz, J., entered a temporary injunction restraining the defendants from holding the referendum on the ordinance repeal until a final judgment was entered.
On October 7, 1997, interveners, two of them, separately filed motions to intervene, which the court granted on December 1, 1997. The case went to trial before Judge Kulawicz on October 22, 1997. Prior to the rendering of judgment, the interveners and defendants therein filed separate motions for a new trial pursuant to § 51-183b of the General Statutes. The court, Vertefeuille, J., granted the respective motions on November 23, 1998. The second trial commenced on January 7, 1999, and Judge Vertefeuille rendered judgment in a Memorandum of Decision dated July 22, 1999. See Van Deusen v. Watertown, 62 Conn. App. 298, 300-02
(2001).
Sprint's application was dated June 4, 1999, and its permit was approved on July 12, 1999, some ten days prior to the decision period.[5]Van Deusen followed and was officially released on March 13, 2001. Sprint uses these dates in that chronology in support of its premise that there was no historic district existent at the time of the application for the permit. The dates and the events that transpired thereon are claimed to clearly support and sustain that argument.[6]
Assuming, arguendo, that the District did exist, Sprint would attempt to explain away the condition precedent of no other alternative being possible. Sprint's radio frequency engineers and site acquisition consultants began a comprehensive search in the Town to locate potential sites for construction of a wireless facility needed to provide its PCS Service to the public along Routes 6 and 63 and nearby areas of Watertown. The investigative search included a potential for a new tower construction at Taft School, the Watertown Golf Club and the Evergreen Cemetery. The determination was made that a wireless facility near the intersection of Routes 6 and 63 was needed because it offered an area of relatively high ground elevation. Its people concluded that other than the church, Sprint was unable to identify other structures of sufficient height and ground elevation in the search area which could be utilized to construct the wireless facility needed to serve this area. No alternatives to constructing that facility in the church in the CT Page 2078 steeple-bell tower were identified. While possible, but due to leasing or topographical constraints, none of those locations were feasible as viable alternatives to the church.
The court is troubled by the imprecision of, as well as the vagueness of, the word "possible" when used in the context of the ordinance.[7]
The word is defined as "that may or can exist, happen, be done, be used, etc. . . . [Synonym] possible, feasible, practicable refer to that which may come about or take place without prevention by serious obstacles."Random House Webster's College Dictionary, 1992. This question, however, will be left for another day.
Sprint has used the word "feasible" in its brief while arguing in favor of its position on "alternative . . . possible." Obviously, this verbiage is a much more sensible approach to the standard set forth on the location of the wireless facility. Sprint's witnesses offered compelling reasons in support of its permit application. The Commission found after hearing that there were no "available" alternatives to the proposal. Indeed, the approval is consistent with the State Historic Preservation Officer's determination that the proposed wireless facility would have no impact on any historic resources, given its "stealth" design. There was no flaw in the Commission's decision to approve Sprint's application for a special permit, whether or not Section 42(L) of the regulations was said to apply.[8]
The appellants have failed to sustain their argument that in granting the defendant Sprint's special use permit, the defendant, Zoning Commission, violated 42(L) of its own regulations, and they cannot prevail upon that hypothesis.
"D. The application granted approves what is actually atelecommunications tower, as opposed to an antenna, and the facility,therefore, does not comply with the Defendant Commission's own zoningregulations including Sections 42c (4), 42(D), 42(G), 42(H) and 42(I)."
Section 42 of the respondent Fire District's Zoning regulations contain certain definitions. One of these is the term "antenna." It is defined as "a device used to collect, transmit and/or receive telecommunications or radio signals. Examples include: panels, microwave dishes and single pole service." A second is the word "tower." That definition is "a structure, whether free-standing or attached to a building or another structure, that is used to support equipment used to collect, transmit and/or receive telecommunications or radio signals. Examples include: monopoles and lattice construction steel structures. CT Page 2079
The appellants assert that Sprint's application is for a "`Stealth Wireless Communication Facility' consisting of six (6) panel antennas [sic] installed inside of the bell tower of the church and associated radio equipment cabinets in the church's basement." They continue that the installation also contemplates the removal of existing decorative panels from the bell tower and replacing them with "identical decorative panels made of radio frequency transparent material." The facility is a commercial operation intended to service an area near the central business district of Watertown. The construction of the facility converts what was primarily the central architectural feature of a church building into a tower used to support a sophisticated commercial wireless telecommunications facility. They also posture that they believe that Sprint has entered into a long term lease agreement with the church for the use of its bell tower. They opine that the proposed facility and its use bear no resemblance to the structure and function of, for example, the antenna that might be used by an amateur radio operator or even a satellite dish that might be used at a local tavern. Its nature is far closer to that represented in the Zoning Commission's definition of a tower and, accordingly, the approval of its construction should be subject to the appropriate zoning regulations.
The respondents answer by saying that at no time has Sprint or any other entity constructed or placed an additional "structure" on the church building as contemplated in the definition of a "tower" in the zoning regulations. Panel antennas (sic) were directly attached to the existing church building and require no additional structure for support as contemplated in the definition of "tower" in the regulations.
It logically follows that a "tower" is a separate structure that supports an "antenna." This Wireless Facility does not utilize another "structure" to support the antennae used to collect, transmit and receive radio signals in its PCS network. To suggest that the proposed antennae can be deemed a monopole or a lattice construction or similar "tower" structure appears to fly in the face of logic.
Sprint further argues that the appellants' claim that its Wireless Facility should be governed by the standards and submission requirements for "towers" in the Zoning Regulations is ridiculous. They recite that regardless to the standards and submission requirements governing the Commission's review of Sprint's proposed Wireless Facility, any denial would have been found to be unsupported by the evidence in the record. They conclude by reciting that this Second Circuit has made it abundantly clear that, absent some specific evidence to the contrary, wireless CT Page 2080 facilities such as those concealed in a church steeple should be approved by local zoning agencies. That is particularly so, they claim, when they obviate the need for a new tower. The court agrees.
The appellants' contention that the facility does not comply with the Defendant Commission's own zoning regulations including Sections 42(c) (4), 42(D), 42(G), 42(H) and 42(I) is not persuasive. This attack on the permit and the Wireless Facility must also fail.
Judgment may enter dismissing the appeal.
Moraghan, J.T.R.